IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
NORFOLK DIVISION

| | |
|---|---|
| LAWANDA BECKETT,<br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>PERDUE FARMS, INC., | Civil Action No. _____<br><br><br>**JURY TRIAL REQUESTED**<br><br>SERVE: CT Corporation System<br>　　　　4701 Cox Rd., Suite 285<br>　　　　Glen Allen, VA, 23060-6808 |

## COMPLAINT

COMES NOW the Plaintiff, LAWANDA BECKETT, by and through undersigned counsel, and moves this court for entry of judgment in her favor, and against defendant PERDUE FARMS, INC. ("PERDUE") and in support of such motion, alleges and avers as follows:

### NATURE OF ACTION

1. Plaintiff LAWANDA BECKETT brings this cause of action under 42 U.S.C. §2000(e) alleging violations of rights guaranteed under Title VII of the Civil Rights Act of 1964, as amended, based upon sex discrimination, sexual harassment, and retaliation.

### JURISDICTION AND VENUE

2. Jurisdiction of this Honorable Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343 and 42 U.S.C. § 2000e-5(f)(3).

1

3. Venue is proper within this District pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3), as the unlawful employment practices alleged in this Complaint occurred in this District.

4. PERDUE presently, and regularly, conducts business in Accomack County, Virginia.

5. PERDUE is subject to personal jurisdiction of this Court pursuant to Va. Code §8.01-328.1(A)(1) & (6).

6. PERDUE presently, and regularly, employees over 500 employees.

7. The unlawful employment practices committed by PERDUE occurred in this judicial district, and Plaintiff would have retained her employment in this judicial district but for the unlawful practices of Defendant.

## PARTIES

8. The Plaintiff, LAWANDA BECKETT, was at all times relevant a citizen and resident of Accomack County, Virginia.

9. Beckett was an employee of PERDUE within the meaning of 42 U.S.C. §2000e(f) at all times relevant to this action

10. Defendant, PERDUE is an employer within the meaning of U.S.C. § 2000e(b) at all times relevant to this action.

11. PERDUE is doing business in Accomack County, Virginia.

12. PERDUE is engaged in an industry affecting commerce and has had more than 15 employees for each working day in each of the twenty or more calendar weeks in the current or preceding year, within the meaning of 42 U.S.C. §2000e(b).

## ADMINISTRATIVE HISTORY

13. On December 5, 2019, Plaintiff timely filed an administrative Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

14. On January 14, 2021, the EEOC issued a Notice of Right to Sue letter.

15. This action is timely filed and all procedural prerequisites to suit have been met.

## ALLEGATIONS

16. Plaintiff is a Black female who was hired by Defendant on or about September 9, 2010 to work in its Accomac, Virginia poultry processing plant.

17. In October 2018, while at the jobsite, Plaintiff met another Perdue Farms, Inc. employee, Demitchius Justice (or "Justice") when he almost collided into her with a forklift, or other apparatus he was operating at the time.

18. Plaintiff and Justice did not work in the same department.

19. On a Friday evening later in October 2018, Justice sexually assaulted Plaintiff off-site after a group outing with other co-workers, at which Justice was the only male present.

20. Plaintiff communicated said assault to family members and friends. She also called 911, but did not receive assistance.

21. The following Monday, Plaintiff notified her supervisor, a "Jorge," of the sexual assault, and asked Jorge to keep Justice away from her. In response, Jorge told Plaintiff that Justice's behavior was not work-related and that she should keep her personal business at home.

22. At the jobsite, Justice told Plaintiff that if he lost his job, he would kill her and her family.

23. Approximately two or three weeks later, Justice began to come up to Plaintiff at work requesting to talk to her, and Plaintiff refused each time.

24. Justice subsequently began to intensify his pursuit of Plaintiff, hitting her on the buttocks at work, and calling Plaintiff on his phone and from others' phones asking her for a date. Plaintiff repeatedly declined.

25. Plaintiff reported Justice's at-work harassment to her supervisor, a "Shelly Henry," who was a new hire, with little experience. Henry told Justice not to come to Plaintiff's line anymore. Justice ignored this command.

26. Plaintiff also waited outside of Associate Relations to speak to Emma Nock, Associate Relations Representative, approximately 3 times to complain about Justice, but she was either turned away, told that Nock was busy, or told to keep her personal business at home.

27. Thereafter, in January 2019, Justice spit on Plaintiff in the parking lot of Perdue Farms, Inc., in response to her repeated rejections of his romantic interest in her.

28. In response to Justice's actions, Plaintiff petitioned for and received an emergency protective order.

29. Plaintiff reported this incident to the Emma Nock, and showed her the protective order so that she could understand the magnitude of the problem with Justice, to no avail.

30. Shortly thereafter, upon information and belief, Justice was terminated from Defendant's employ for reasons unrelated to Plaintiff's complaints.

31. Beginning in February 2019, Justice renewed his sexual advances toward Plaintiff, via phone calls, texts, and Facebook Messenger, requesting to be in a romantic relationship with her.

32. Plaintiff declined his advances.

33. Justice also would follow Plaintiff and appear at destinations to which she traveled, attempting to engage with her. Plaintiff repeatedly rebuffed him.

34. In response to Plaintiff's rejection, Justice began to make threats toward Plaintiff and her family, specifically threatening to kill Plaintiff's 19-year-old son. Plaintiff called 911 on approximately five different occasions in response to Justice's actions.

35. In approximately March or April 2019, Defendant rehired Justice.

36. Upon learning that Justice was again employed by Defendant, Plaintiff went to her supervisor, John Tucker, to ask for protection at work, again notifying Defendant, through its employees and agents, that Justice had been harassing her. Upon information and belief, Mr. Tucker told Justice not to have any contact with Plaintiff at work, but took no further action.

37. Plaintiff also told Tucker about the previous sexual assault that she had reported to Jorge, and attempted to show Tucker harassing Facebook messages and texts from Justice, to which Tucker responded by telling Plaintiff to keep her private business at home.

38. From April 2019 to August 2019, Justice continued making sexual advances toward Plaintiff, which Plaintiff rejected. Instead of taking "no" for an answer, Justice sexually harassed Plaintiff at the jobsite by grabbing and touching her breasts and buttocks, walking up behind her and rubbing his genitals on her buttocks through their clothing, embracing her and pressing his body tightly against hers in an aggressive and threatening manner, blocking in her car with his car when she attempted to leave work for the day—demanding that she speak with him, and chasing her around the plant in order to engage her in discussions about his interest in a romantic relationship.

39. Justice also made threats of physical violence against Plaintiff at work, in response to her rejection of him.

40. From April 2019 to August 2019, Plaintiff repeatedly ran into the offices of her supervisors and other superiors, often in tears, to complain of Justice's actions at work.

41. Said supervisors and managers included Kelvin Baptiste, John Tucker, "Shelly Henry," "Jorge," and Associate Relations Representative, Emma Nock.

42. Outside of work, Justice continued making harassing phone calls and sending harassing text and Facebook messages. In August 2019, Plaintiff was threatened by Justice in the parking lot of McDonald's in Exmore, VA. Plaintiff called 911, and Justice fled the scene. Plaintiff also reported this incident to her supervisors, to no avail.

43. In response to Plaintiff's spurning of Justice's advances, Justice renewed his threats of violence against Plaintiff and her family at work. Plaintiff continued to report Justice's behavior to management, and was repeatedly ignored.

44. Justice continued his constant and relentless verbal and physical pursuit of Plaintiff outside and inside the jobsite. Upon information and belief, Baptiste--after repeated previous reports of sexual harassment from Plaintiff against Justice--finally told Justice to stay away from Plaintiff in approximately late August 2019, after Plaintiff again complained that Justice had just hit her on the buttocks inside of the plant. No further action was taken by PERDUE.

45. Beginning in August 2019, Plaintiff also began reaching out to Justice's probation officer to seek assistance. Upon information and belief, Justice ignored any attempts at corrective instruction by the probation officer.

46. On September 10, 2019 and September 11, 2019 Plaintiff also made approximately 5 calls to PERDUE's corporate headquarters to complain about Justice's workplace harassment. Each time that she called, Plaintiff left a voicemail message pleading for help. No one ever answered her calls, responded to her voicemail messages, or returned her calls.

47. Subsequently, on or about September 28, 2019, Plaintiff was in the cafeteria of Defendant's plant.  Justice approached Plaintiff again seeking to engage her in conversation, and asking her for a dollar. Plaintiff walked away from him and walked to the cafeteria cashier to address an issue of losing her money in the cafeteria vending machine. Justice approached her from behind, rubbed his

genitalia on her buttocks, swayed from side to side, and whispered a threat into her ear.

48. Plaintiff again stepped away from Justice. After Plaintiff filled out a claim form regarding the lost money and went to turn it in to the cashier, Justice attempted to grab her hand, and Plaintiff yanked it away, striking him.

49. Plaintiff, as she did many times before, ran to a superior. At this time, she spoke to Lolita Hall, and a "Mario," to report the incident. Plaintiff was excused from work.

50. Baptiste walked with Plaintiff out of the plant, and continued to discuss Justice's harassment with Plaintiff. In this conversation, Baptiste vulgarly stated that judging from Justice's actions and infatuation with Plaintiff, he, Baptiste, also wanted to engage in sexual relations with Plaintiff (paraphrased).

51. Plaintiff attempted to report Baptiste to Human Resources and to Defendant's corporate office, but did not receive any return phone calls.

52. Three days after the cafeteria incident, Plaintiff was notified that she was suspended.

53. After being suspended, Plaintiff reminded Associate Relations/Human Resources representative, Emma Nock, that she had previously reported Justice's harassment against her to her superiors, to no avail.

54. Plaintiff was ultimately terminated for the aforementioned alleged assault on Justice in Defendant's cafeteria on or about September 28, 2019.

55. Plaintiff subsequently requested a Peer Review of her suspension and termination.

56. Defendant's Associate Handbook specifically identifies "Peer Review" as a mechanism that "addresses complaints involving disciplinary actions, terminations, or the consistent application of Company policies." (Perdue Farms Associate Handbook, April 2012).

57. Although Plaintiff was suspended--a disciplinary action--and terminated, she was denied a Peer Review, and was only allowed a "Management Review."

58. This denial was in direct contrast to other employees' requests for Peer Review.

59. During Plaintiff's Management Review, she again recounted all of the workplace harassment that she had experienced at the hands of Justice. She also reported Baptiste's vulgar sexually harassing statement to Emma Nock and Sam Rascona at her Management Review.

60. Plaintiff's suspension and termination were upheld in the Management Review process.

61. Justice was retained as an employee of Perdue Farms, Inc., in contrast to Plaintiff, even though he had been previously been warned not to have any contact with Plaintiff, and in spite of the fact that she had previously reported his behavior to their superiors.

62. Baptiste received no discipline whatsoever for his sexually harassing behavior.

63. Upon information and belief, male supervisors and managers at PERDUE have carried on inappropriate sexual relationships with numerous female subordinate employees, against company policy. Upon information and belief, said supervisors and managers have been retained, and have used their positions to

adversely affect the employment of female subordinate employees at PERDUE.

## COUNT I
## SEXUAL HARASSMENT

64. Plaintiff incorporates as if fully restated all of the foregoing and subsequent paragraphs.

65. "To demonstrate sexual harassment and/or a racially hostile work environment, a plaintiff must show that there is '(1) unwelcome conduct; (2) that is based on the plaintiff's sex [and/or race]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.' " *Mosby-Grant v. City of Hagerstown*, 630 F.3d 326, 334 (4th Cir.2010).

66. Plaintiff was subjected to unwelcome, offensive, and harassing sexually discriminatory conduct during her employment with PERDUE, which was perpetrated upon her by Justice, and later, Baptiste, as enumerated above. Said harassment was based on her sex.

67. Specifically, Plaintiff was subjected to said behavior **at the workplace** in the following ways:

   a. In or about October 2018 Justice threatened to kill Plaintiff if he lost his job due to her reports of his sexual assault of Plaintiff to her supervisor, "Jorge."

   b. From approximately November 2018 to January 2019, Justice harassed Plaintiff at work by repeatedly coming up to her asking her to go on dates, slapping her on the buttocks, embracing her against her will, grabbing her

10

in response to her rejection of his advances, and sending her harassing text messages while both were at work.

c. From April 2019 to August 2019, Justice sexually harassed Plaintiff at the jobsite by "grabbing and touching her breasts and buttocks, walking up behind her and rubbing his genitals on her buttocks through their clothing, embracing her and pressing his body tightly against hers in an aggressive and threatening manner, blocking in her car with his car when she attempted to leave work for the day—demanding that she speak with him, and chasing her around the plant in order to engage her in discussions about his interest in a romantic relationship." (excerpted from paragraph 38 above).

d. From April 2019 to August 2019, Justice made threats of violence against Plaintiff and her family while at the jobsite, in response to Plaintiff's rejection of his advances.

e. On September 28, 2019, Justice approached Plaintiff in the plant's cafeteria, asking for her a dollar, after having been told to stay away from Plaintiff. Plaintiff rebuffed him. Justice subsequently followed Plaintiff to the cafeteria cashier, rubbed himself against her, and whispered a threat into her ear. Approximately 30 seconds later, Justice grabbed Plaintiff's arm/hand against her will.

f. On September 28, 2019, Kelvin Baptiste, Plaintiff's superior, stated that judging from Justice's infatuation with Plaintiff, Baptiste wanted to engage in sexual relations with Plaintiff.

68. On many occasions between April 2019 and August 2019, Plaintiff notified her superiors of all of the above sexual harassment at the jobsite (as well as his conduct offsite), but Defendant and its representatives failed to adequately respond to her requests for intervention.

69. Defendant failed to address Plaintiff's report of sexual harassment by Baptiste at all.

70. This sexually harassing and discriminatory conduct was sufficiently severe and pervasive so as to unreasonably interfere with Plaintiff's mental health, work performance, and so as to create an intimidating, hostile and offensive working environment.

71. Plaintiff was subjected to unwanted touching, sexual advances, increasingly escalating threats of physical violence against her and her family, and other harassment, based on her sex, but Defendant failed to take adequate corrective actions.

72. PERDUE, by and through its agents or supervisors failed to adequately supervise, control, discipline, and/or otherwise penalize the conduct and acts of its employees.

73. As a direct and proximate result of the harassing and hostile sexual environment at PERDUE, Plaintiff suffered great humiliation and mental anguish.

## COUNT II
## SEX DISCRIMINATION

74. Plaintiff incorporates as if fully restated all of the foregoing and subsequent paragraphs.

75. Plaintiff and Defendant herein are employee and employer, respectively, for purposes of the definition set forth in 42 U.S.C. §2000e *et seq*.

76. 42 U.S.C. §2000e-2(a) provides that "it shall be an unlawful employment practice for an an employer…to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's…sex." Defendant's conduct was in violation of 42 U.S.C. §2000e *et seq*.

77. During the course of Plaintiff's employment with Defendant, the Defendant, by and through its agents and employees, discriminated against Plaintiff in the terms, conditions, and privileges of employment in various ways, in substantial part because of her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq*.

78. Plaintiff was subjected to the aforementioned harassment and discrimination because of her sex.

79. The aforementioned sex discrimination created an intimidating, oppressive, hostile and offensive work environment which interfered with Plaintiff's emotional and mental well-being.

80. As a result of the hostile and offensive work environment perpetrated by Defendant's employees and agents, and Defendant's failure to protect Plaintiff from such discrimination, Plaintiff suffered humiliation, emotional distress, and mental anguish.

81. PERDUE, by and through its agents or supervisors failed to adequately supervise, control, discipline, and/or otherwise penalize the conduct and acts of its employees.

82. Defendant failed to take all reasonable and necessary steps to eliminate sex discrimination from the workplace and to prevent it from occurring in the future.

83. Defendant terminated Plaintiff, despite repeated reports of the harassment perpetrated against her by Justice that led to the aforementioned cafeteria incident on or about September 28, 2019.

84. Defendant denied Plaintiff a Peer Review, even though she was entitled to one according to PERDUE's own policies.

85. Defendant retained Justice despite his actions, both on September 28, 2019, and prior to that date.

86. Defendant employed no disciplinary action against Baptiste for his offenses against Plaintiff.

87. As a direct and proximate result of the harassing and hostile sexual environment at PERDUE, Plaintiff suffered great humiliation and mental anguish.

88. As a direct and proximate result of sex discrimination, Plaintiff suffered lost wages, and is entitled to front pay and back pay.

## COUNT III
## RETALIATION

89. Plaintiff incorporates as if fully restated all of the foregoing and subsequent paragraphs.

90. "To state a prima facie case of retaliation, a plaintiff must show that (1) the plaintiff engaged in a protected activity, such as filing a complaint with the EEOC; (2) the employer acted adversely against the plaintiff; and (3) the protected activity was causally connected to the employer's adverse action." *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir.1997).

91. Upon information and belief, Plaintiff was terminated as a result of her reports of sexual harassment leading up to the cafeteria incident on September 29, 2019, and as a result of her reports of sexual harassment made to Associate Relations during her suspension period and during the Management Review process.

92. Plaintiff was terminated, while Justice was retained, and Baptiste received no discipline whatsoever.

93. Plaintiff was denied a Peer Review, against Defendant's own stated policies.

94. Plaintiff believes, and based thereon alleges, that in addition to the practices stated above, Defendant may have engaged in other discriminatory practices against her which are not yet fully known. At such time as such discriminatory practices become known, Plaintiff will week leave of Court to amend this Complaint in that regard.

95. As a direct and proximate result of the Defendant's willful, knowing, and intentional discrimination and retaliation against Plaintiff, Plaintiff has suffered

and will continue to suffer pain, humiliation, and emotional distress. Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amount to be proven at trial.

96. Plaintiff believes, and based thereon alleges, that the Defendant's conduct as described above was willful, wanton, malicious, and done in reckless disregard for the safety and well-being of Plaintiff. By reason thereof, Plaintiff is entitled to punitive or exemplary damages from the Defendant in a sum according to proof at trial.

## PRAYER FOR RELIEF

WHEREFORE, PLAINTIFF LAWANDA BECKETT prays that this Court enter judgment in her favor, and against defendant PERDUE FARMS, INC., in an amount, no less than $300,000, which will compensate her for:

A. Violation of her rights under Title VII of the Civil Rights Act of 1964;

B. Compensatory damages including lost wages, past and future and/or impairment of power to earn money; emotional distress, mental anguish and humiliation, past and future; and

C. Punitive damages to punish the Defendant for its willful, wanton, oppressive, malicious, and/or grossly negligent conduct;

Plaintiff further prays for:

A. Injunctive relief consisting of an order requiring PERDUE to establish and maintain an anti-sexual harassment, anti-retaliation, and anti-sex discrimination training

program for supervisors, to be approved and an monitored by the United States Equal Employment Opportunity Commission;

B. Trial by jury on all issues so triable;

C. Attorney's fees;

D. Costs incurred in prosecuting this action and otherwise challenging Defendant's unlawful activities;

E. Pre-judgment and post-judgment interest;

F. Front pay and back pay; and

G. Any and all other relief to which she may be entitled.

Respectfully submitted,

/s/ Stephen Teague

Stephen Teague, VSB # 81006
LAW OFFICE OF STEPHEN C. TEAGUE
P.O. Box 706
Newport News, VA 23607
Telephone: (757) 317-0716
Facsimile: (757) 215-2974
E-mail: stephen@teaguelawoffice.com
*Counsel for Lawanda Beckett*

Dated: April 10, 2021